UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT CROWELL a/k/a Robert Crowell, Sr.,

                    Petitioner,

          v.
                                                          9:17-CV-0176
                                                          (BKS)
HAROLD GRAHAM,

                    Respondent.
_____

APPEARANCES:                                OF COUNSEL:

ROBERT CROWELL
Petitioner, pro se
12-A-5154
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021

HON. ERIC T. SCHNEIDERMAN             HANNAH S. LONG, ESQ.
Attorney for Respondent               Ass't Attorney General
New York State Attorney General
120 Broadway
New York, New York 10271

BRENDA K. SANNES
United States District Judge

                          **DECISION and ORDER**

**I.    INTRODUCTION**

          Petitioner Robert Crowell seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Dkt. No. 1, Petition ("Pet.").  Respondent opposes the petition.  Dkt. No. 15, Respondent's

Answer; Dkt. No. 15-1, State Court Records ("SCR"); Dkt. No. 15-2, Respondent's

Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("R. Mem.");

Dkt. No. 17, Respondent's Sealed Memorandum of Law in Opposition to the Petition for a

Writ of Habeas Corpus; Dkt. No. 17-1, Sealed State Court Records; Dkt. No. 17-2, Sealed

State Court Transcripts (T.).[1]  Petitioner was advised that he could, but was not required to,

file a reply.  Dkt. No. 16.  No reply was submitted.

For the reasons that follow, petitioner's habeas petition is denied and dismissed.

## II.    BACKGROUND

### A.    2008 Indictment & Plea

The Third Department outlined the facts leading up to petitioner's plea hearing:

> On April 17, 2008, the victims (twins born in 1997) disclosed to a
> school counselor and, subsequently, a State Police investigator
> that [petitioner] had subjected them to repeated acts of sexual
> abuse over the course of several years. That same day, [petitioner]
> was arrested and charged in a felony complaint with rape in the
> first degree for conduct that allegedly occurred on March 30, 2008.
> After police discovered an image and several videos of child
> pornography on [petitioner's] home computer, he was also charged
> by indictment with 17 counts of possession of a sexual
> performance by a child.

*People v. Crowell*, 130 A.D.3d 1362, 1362-63 (3rd Dep't 2015); *see also* SCR 741-745.  The

victims recanted their testimony about the March 30, 2008 rape prior to testifying before the

grand jury; thus, the only indicted charges were related to the child pornography.  T. 21, 354-

55, 387-89, 410-11, 432-33.

On November 7, 2008, a negotiated plea was entered on the record.  SCR 94-110.

The court outlined the agreement: petitioner would plead guilty to Counts 1-3 of the

---

[1]  Pursuant to a partially-granted letter request, respondent filed the response, memorandum of law, and state court records under seal to preserve the privacy of the victims in the underlying criminal case. Dkt. No. 14 (citing N.D.N.Y.L.R. 8.1(2), (6)).  Respondent filed redacted copies of his moving papers as well as unredacted copies, under seal.  Given the nature of the underlying criminal conviction, no specific references will be made to either of the victims referenced in the sealed state court records; however, general discussion about and citation to the testimony in the sealed court record will be made.  For ease of retrieval, citations to the sealed state court transcripts refer to the pagination generated by CM/ECF, the Court's electronic filing system, and not the pagination included on each individual transcript.

seventeen count indictment and waive his right to appeal in exchange for a sentence of two to six years incarceration.  SCR 98-99.  The petitioner acknowledged that (1) he was not under the influence of any drugs, medication or other substance that would affect his ability to think clearly; (2) the plea represented a felony conviction, which resulted in petitioner having multiple felony convictions; (3) he was waiving his right to a jury trial and an appeal; and (4) he was entering the agreement on his own accord without "anyone forcing, threatening, or coercing [him] in any way into giving up [his] rights . . . ."  SCR 101-03.

The parties then went into a very specific discussion about the terms of the plea.

| [Defense]: | Your Honor, I just wanted to put one other item on the record. |
|---|---|
| The Court: | Please do. |
| [Defense]: | I understand the matter [petitioner] was currently arrested on or initially arrested on in April of this year is not going to be pursued by the -- |
| The Court: | Very good point.  Excellent point.  There was discussion back and forth, and we ought to just clarify it on the record now. |
| [People]: | That's correct, Judge, based upon the [petitioner] [sic] was arrested for a March 2008 allegation of rape against [the two victims], that March 2008 allegation, the charge that was pending in the local justice court and that actually still pends, will be dismissed and the People will be precluded from pursuing that in the future.  In addition, this will resolve all of the issues regarding the defendant's computer as well. |
| The Court: | Right, right. |
| [People]: | I advised [petitioner's counsel] of some things that we found that I was advised of last evening, and it will resolve all of those issues.  This is in satisfaction of anything we could have found on the computer. |

3

| The Court: | On the computer, this plea's taken in satisfaction of the rape charge. |
|---|---|
| [Defense]: | Yes. |
| [People]: | This will put it all – |
| The Court: | All right.  So then do you understand that, Mr. Crowell? |
| [Petitioner]: | Yes, sir. |

SCR 103-05.  Petitioner then allocuted and pled guilty to the aforementioned child pornography charges.  SCR 105-07.

On January 16, 2009, petitioner was sentenced to two to six years incarceration, in addition to various fees and surcharges, on the above plea.  SCR 112-17.

### B.    2012 Indictment & Trial

In 2010, when the victims became aware that petitioner was going to be released from prison, they withdrew their prior recanted testimony and renewed allegations of sexual abuse at the hands of petitioner.  T. 390-91, 409-11.  On March 21, 2012, petitioner was indicted on two counts of course of sexual conduct against a child in the second degree (N.Y. Penal Law ("Penal Law") § 130.80(1)(a)) and two counts of course of sexual conduct against a child in the first degree (Penal Law § 130.75(1)(a)).  SCR 48-50.

A jury trial commenced on September 5, 2012.  T. 218-621.  The victims testified to two distinct periods of abuse based upon the geographic location where the abuse occurred. During the first period, from June 8, 2003, through June 8, 2004, the abuse occurred approximately twice a week and consisted of petitioner touching the victims' chests and vaginas with his hands.  T. 339, 341, 367, 398-402, 414, 417.  The abuse ceased for a

4

period of time when petitioner was in transition between two residences; it began again when petitioner moved into his new home.  T. 342, 420-21.

From June 8, 2005, though March 1, 2008, the victims testified that the abuse significantly escalated.  T. 363, 376-77, 403-04, 424-25.  Approximately twice per week, the petitioner abused his victims, including: performing oral sex on the victims (T. 344, 346, 404-05, 425); having one of the victims perform oral sex on petitioner (T. 344, 404); having the victims perform oral sex on each other (T. 346-47, 405); and/or partially inserting his penis into each of the victim's vaginas (T. 344-46, 377-78, 406, 425).  Petitioner also regularly showed the victims videos of adults engaging in sexual activities with children.  T. 348-49, 406-07.  Petitioner was found guilty on all four course of sexual conduct charges.  T. 618-19.

On November 13, 2012, petitioner was sentenced to the maximum amount of time permitted, two seven-year terms for course of sexual conduct against a child in the second degree and two twenty-five-year terms for course of sexual conduct against a child in the first degree.  SCR 25, 43-44.  All sentences were ordered to run consecutively for a maximum sentence of sixty-four years in prison plus another twenty years of post-release supervision. SCR 25, 44-45.

### C.    The Direct Appeal

In a counseled brief to the Appellate Division, Third Department, petitioner argued that: (1) the indictment should have been dismissed because petitioner's 2008 guilty plea colloquy reflected the parties' intent that the plea would cover any and all uncharged sex crimes made out by the victims' disclosures; (2) the indictment should be dismissed pursuant to Criminal Procedure Law ("CPL") §§ 40.20(2) and 40.40(2) and on double jeopardy grounds since the acts alleged in the 2012 indictment were part of the same criminal

transaction that was underlying petitioner's 2008 guilty plea; (3) defense counsel was

ineffective for failing to make a dispositive motion to dismiss the indictment under CPL §

30.30; and (4) the counts in the indictment were multiplicitous given the temporal proximity

and continuing nature of the charged offenses.  SCR 146-95.

In a decision dated July 30, 2015, the Appellate Division affirmed the judgment of the

Sullivan County Court.  *Crowell*, 130 A.D.3d at 1365.  The court first held that

> [t]he record does not support defendant's contention that his 2008
> guilty plea satisfied all potential charges arising out of his
> protracted sexual abuse of the victims so as to warrant dismissal of
> the instant indictment. Rather, the People specified during the plea
> colloquy that, as part of the agreement, the felony complaint
> charging defendant with rape in the first degree would be
> dismissed and the People would be precluded from pursuing that
> charge in the future. County Court then confirmed that defendant's
> guilty plea was being taken in satisfaction of all charges with
> respect to his computer and the rape in the first degree charge. No
> explicit promises were made with regard to any other uncharged
> sex crimes being encompassed by defendant's guilty plea, and any
> unstated intention or off-the-record promise to that effect is not
> entitled to judicial recognition inasmuch as it would be inconsistent
> with the terms and conditions of the plea agreement placed on the
> record.

*Id.* at 1363-64.  Second, the court found the trial and conviction on the instant charges did

not violate principles of double jeopardy.  To the extent petitioner relied on CPL § 40.20(2),

such contentions were rejected because

> [h]ere, the rape charged in the 2008 felony complaint arose out of a
> March 30, 2008 incident, whereas the four counts of the subject
> indictment charge a course of sexual conduct occurring from June
> 8, 2003 to June 8, 2004 (counts 1 and 2) and from June 8, 2005 to
> March 1, 2008 (counts 3 and 4). The conduct alleged in these two
> accusatory instruments occurred at different times and involve
> separate and distinct criminal acts that are not part of the same
> criminal transaction. . . . Likewise, defendant's 2008 possession of
> numerous pornographic videos of other children engaging in sexual
> performances is not part of the same criminal transaction as his

6

> acts of subjecting the victims to repeated acts of sexual abuse over
> the course of a more than four-year period commencing in June
> 2003.

*Id.* at 1364.  To the extent petitioner relied on CPL § 40.40, such claims were rejected on the

ground that the claims were not preserved.  *Id.* at 1364 n.3.  Third, the court held that

petitioner's counsel was not ineffective because there was no issue with the People's

readiness for speedy trial purposes as "the felony complaint and subsequently filed

indictment charge conduct plainly arising from separate and distinct criminal transactions,"

and the People timely announced readiness for both felonies.  *Id.* at 1365.  Finally, the court

refused to address the argument that the counts were multiplicitous because petitioner

"failed to preserve [that issue] for [the court's] review . . . ."  *Id.*

On August 3, 2015, in another counseled brief, petitioner sought leave to appeal the

Third Department's decision to the New York State Court of Appeals.  SCR 746-52.

Specifically, petitioner argued that the Third Department erred in concluding: (1) the record of

the 2008 plea colloquy did not support the conclusion that future criminal charges other than

those contained in the rape and endangering complaints were precluded; (2) double jeopardy

principles did not bar prosecution of the subsequent indictment as the acts were all part of

the same criminal transaction; and (3) defense counsel was not ineffective when he failed to

move to dismiss the indictment pursuant to CPL § 30.30.  SCR 748-49.  The People opposed

petitioner's application for leave to appeal.  SCR 753-59.  The Court of Appeals denied the

motion.  *People v. Crowell*, 26 N.Y.3d 1144 (2016).

Petitioner filed a petition for a writ of certiorari in the United States Supreme Court.

Pet. at 4.  The petition was denied.  *Crowell v. New York*, 137 S.Ct. 1333 (2017).

7

III.    **THE PETITION**

Petitioner seeks habeas relief on the following grounds: (1) the lower court erred when it refused to dismiss the second indictment because the 2008 guilty plea encompassed the parties' intentions that it covered all potential sexual abuse charges the victims' could have alleged on or before petitioner's April 2008 arrest; (2) the lower court erred when it refused to dismiss the indictment pursuant to double jeopardy, specifically CPL §§ 40.20 and 40.40; (3) the lower court erred in failing to dismiss the indictment for alleging multiplicitous claims; and (4) counsel was ineffective for failing to move to dismiss the second indictment.  Pet. at 6-11.

IV.    **DISCUSSION**

A.    **Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

8

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 567 U.S. 37, 38 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779).  A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).  "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr*., 790 F.3d 109,

9

121 (2d Cir. 2015) (internal quotation marks omitted).  Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]"  *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

### B.     2012 Prosecution in Violation of 2008 Plea Promises

Petitioner's claims that his due process rights were violated by the subsequent indictment and prosecution following his 2008 plea are insufficient for habeas relief because the state court decision was not a contrary application to, or an unreasonable application of, clearly established Supreme Court precedent.

The Supreme Court acknowledged that plea bargaining represents "an essential . . . [and] highly desirable part [of the criminal process] for many reasons," so long as there is "fairness in securing agreement between an accused and a prosecutor."  *Santobello v. New York*, 404 U.S. 257, 261 (1971).  Accordingly, the notions of fundamental fairness proscribed by due process require that plea bargaining include "safeguards to insure the defendant what is reasonably due in the circumstances."  *Id.* at 262.  While there is no uniform rule, as "circumstances will vary, . . . when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Id.*

Courts have been directed to "review interpretations of plea agreements . . . in accordance with principles of contract law [and] . . . follow the reasonable understandings and expectations of the defendant with respect to the bargained-for sentence."  *United States v. Palladino*, 347 F.3d 29, 32-33 (2d Cir. 2003) (internal quotation marks and citations

omitted). First, the terms must be established. "The terms of a plea agreement are issues of fact." *Guzman v. Couture*, No. 1:99-CV-11316, 2003 WL 165746, at \*16 (S.D.N.Y. Jan. 22, 2003) (citing cases). In construing the terms of the plea, "no[] . . . Supreme Court opinion . . . holds . . . that federal due process requires that all conditions placed on a sentence promised in a plea bargain be communicated to the defendant unambiguously." *Mask v. McGinnis*, 252 F.3d 85, 89-90 (2d Cir. 2001) (internal quotation marks and citations omitted). Further, courts have refused to recognize off-the-record promises. *See e.g., Siegel v. State of New York*, 691 F.2d 620, 623-26 (2d Cir. 1982) (holding that refusing to enforce such promises (1) promotes important policies – enhancing the certainty and integrity of the plea process and improving finality of convictions – and (2) is a reasonable assumption as counsel should impress upon defendant that the record is the best protection in pursuing post-conviction remedies). It is also important to note that "courts must . . . apply the deferential AEDPA review standard to claims of breaches of a plea agreement." *Gomez v. Duncan*, No. 1:02-CV-0846, 2004 WL 119360, at \*24 (citing *Mask*, 252 F.3d at 89-91 & n.2).

The AEDPA standard applies to the present matter because petitioner's plea violation claims have been fully adjudicated on the merits in state court. Liberally construing petitioner's claim, he asserts that the prosecution breached its promise – not to prosecute petitioner for any crimes committed during the four years in which he sexually abused the victims prior to the 2008 rape charge – which induced his acceptance of the 2008 guilty plea. In turning to the language of the plea, as found by the Third Department, petitioner agreed to plead guilty and, in return, the rape charge and all potential computer charges would be dismissed and petitioner would not be subject to prosecution for the rape charge in the

11

future. *Crowell*, 130 A.D.3d at 1363. Specifically, the prosecutor said "the charge that was pending in the local justice court and that actually still pends, will be dismissed and the People will be precluded from pursuing that in the future. In addition, this will resolve all of the issues regarding the defendant's computer as well." SCR 104. The prosecutor referred to "the charge" pending in the justice courts – the rape charge – and "all" issues on the computer. The factual determinations by the state court – that the plea language was very specific in including the single March 2008 rape charge and any potential charges that could be derived from the information found on the petitioner's computer after it was secured and not including any other uncharged sex crimes – requires deference unless clear and convincing evidence rebuts that presumption. *Schriro*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)). No such evidence has been presented in this case. Further, the appellate court's reasoning is consistent with clearly established federal law as petitioner was provided with exactly what he was promised.

To the extent that petitioner contends that the language was ambiguous or inconsistent with an off-the-record promise, those arguments were also properly addressed by the state court in a manner consistent with clearly established federal law. No Supreme Court opinion requires that terms be unambiguous. *Mask*, 252 F.3d at 90. Further, refusing to recognize any alleged off-the-record promises is also not an unreasonable interpretation of *Santobello*. *Siegel*, 691 F.2d at 623-26. The primary inquiry rests on whether petitioner was provided with what he was promised which induced him to plead guilty. Here, after pleading guilty, petitioner was not further prosecuted for the March 2008 rape or any computer pornography; accordingly, petitioner received precisely what he was promised during the colloquy with the court. *Santobello*, 404 U.S. at 262.

12

For the reasons above, the state court did not unreasonably apply clearly established Supreme Court precedent; therefore, petitioner is not entitled to habeas relief.

**C.      Double Jeopardy**

Petitioner's double jeopardy claim is not entitled to relief because it was: (1) not presented in constitutional terms; (2) unexhausted and procedurally defaulted; and (3) meritless, even if liberally construed as being presented in constitutional terms.

Petitioner argues that he was twice prosecuted for the same offense in violation of CPL §§ 40.20 and 40.40.  Both of the statutes petitioner cites are New York State statutes; therefore, petitioner presents his claims in terms of a "depriv[ation] of . . . statutory protection[s] against double jeopardy [which are] . . . not . . . federal claim[s] that [are] cognizable on a petition for habeas corpus."  *Murden v. Artuz*, 253 F. Supp. 2d 376, 382 n.4 (E.D.N.Y. 2001).  Thus, petitioner did not explicitly alert the state court to the federal nature of his double jeopardy claims.  Accordingly, petitioner's claims are unexhausted because they did not travel through one entire round of the state court appellate process.  *O'Sullivan*, 526 U.S. at 845.  Further, they are procedurally defaulted because he can no longer raise them in any state forum.  Petitioner already pursued the direct appeal to which he is entitled and, because the claims were reviewable from the record, he cannot raise them in a motion to vacate the judgment.  *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991) (explaining that where "the one request for leave to appeal" was taken and additional collateral review would be barred because the issues could have been raised on direct appeal, "petitioner no longer has 'remedies available' in the . . . state courts . . . and . . . he had met the statutory exhaustion requirements . . .").

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he or she is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014); *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency.") (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman*, 501 U.S. at 753. If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Here, petitioner has neither alleged nor does the record support any contentions of cause or actual innocence. Because cause has not been established, no discussion of prejudice is necessary. Thus, habeas review is precluded.

Liberally construing the claims, it could be argued that, given petitioner's verbiage, he successfully alerted the court to the constitutional nature of his claims by alleging that he was twice prosecuted for the same crime in violation of double jeopardy. *See Daye v. Attorney General of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (holding that where a claim is "assert[ed] . . . in terms so particular as to call to mind a specific right protected by the

Constitution," or "alleg[ed] . . . a pattern of facts . . . well within the mainstream of constitutional litigation," the matter has been fairly presented to the state courts).  This argument is of little consequence though, because even disregarding the aforementioned procedural reasons to deny review, the claim is also without merit.

"The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *United States v. Dinitz*, 424 U.S. 600, 606 (1976) (citing cases).  Jeopardy attaches when "a defendant is put to trial before the trier of facts, whether the trier be a jury or a judge." *Serfass v. United States*, 420 U.S. 377, 388 (1975) (internal quotation marks and citations omitted).  Additionally, jeopardy attaches when a guilty plea is taken as a guilty plea "is conclusive"; therefore, it too "is itself a conviction." *Kercheval v. United States*, 274 U.S. 220, 223 (1927).  Then, courts evaluate whether "[e]ach of the offenses . . . requires proof of a different element. . . . [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to . . . determine whether there are two offenses . . . is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (citations omitted).

Here, petitioner has two convictions to which jeopardy has attached; however, he was never prosecuted for the same offense.  As the state court noted, "[t]he conduct alleged in these two accusatory instruments occurred at different times and involve separate and distinct criminal acts that are not part of the same criminal transactions." *Crowell*, 130 A.D.3d at 1364 (explaining the first indictment arose from an alleged March 30, 2008 rape and child pornography extracted from petitioner's computer and the second indictment

contained two counts arising from sexual conduct from June 2003 until June 2004 and from June 2005 to March 1, 2008.   Specifically, petitioner was arrested for endangering the welfare of a child (Penal Law § 260.10), accused of raping the victims on March 30, 2008, indicted for seventeen counts of possession of sexual performance by a child (Penal Law § 263.13), and ultimately pled guilty to three counts of possession of sexual performance by a child.  Petitioner never pled guilty or stood before a trier of fact with regard to the crimes of endangering the welfare of a child by knowingly acting in a manner likely to be injurious to the child's welfare (Penal Law § 260.10(1)) or rape in the first degree (Penal Law § 130.35(3)), so jeopardy never attached.  *Dinitz*, 424 U.S. at 606; *Kercheval*, 274 U.S. at 223.

However, jeopardy did attach to petitioner's guilty plea, whereby

> [a] person is guilty of possessing a sexual performance by a child when, knowing the character and content thereof, he knowingly has in his possession or control, or knowingly accesses with intent to view, any performance which includes sexual conduct by a child less than sixteen years of age.

Penal Law § 263.16.  Similarly, jeopardy attached to the conviction petitioner received at the conclusion of his trial for two counts of a course of sexual conduct against a child in the second degree and two counts of sexual conduct against a child in the first degree.  The second-degree offense is committed when, over a period of not less than three months, a person engages in two or more acts of "sexual conduct" – which includes sexual contact or the "touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party" – with a child less than eleven years old.  Penal Law §§ 130.00(3), 130.80(1)(a).  The first-degree offense differs in that the "sexual conduct" must include at least one act of "oral sexual conduct" or sexual intercourse ("meaning . . . any penetration, however slight").  Penal Law §§ 130.00(1), (2)(a), (3), 130.75(1)(a).

16

A plain reading of the three statutes demonstrates what the state court held: petitioner's "2008 possession of numerous pornographic videos . . . is not part of the same criminal transaction as his acts of subjecting the victims to repeated acts of sexual abuse over the course of a more than four-year period commencing in June 2003." *Crowell*, 130 A.D.3d at 1364. The state court, while not explicitly saying so, essentially held that each crime requires different proof than the next. *Blockburger,* 284 U.S. at 304. Therefore, the state court's conclusion that double jeopardy was not violated because the crimes to which petitioner pled and of which he was convicted were based upon different elements and required different factual proof was a reasonable application of clearly established Supreme Court precedent.

Accordingly, petitioner's request for habeas relief is denied.

**D.     Multiplicity of the Charges of Courses of Sexual Conduct**

Petitioner's claim that the course of sexual conduct counts are multiplicitous – representing one single transaction not amenable to separation – is not entitled to relief because it is: (1) procedurally barred and (2) meritless.

A federal court is precluded from issuing a writ of habeas corpus if an adequate and independent state-law ground justifies the petitioner's detention. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). Accordingly, "[f]ederal courts generally will not consider a federal issue in a case 'if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). This results in a state-law procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

17

This analysis applies with equal force "whether the independent state law ground is substantive or procedural . . . ."  *Garvey*, 485 F.3d at 713 (citing *Lee*, 534 U.S. at 375). Pursuant to this analysis, a state law ground is generally adequate where "it is firmly established and regularly followed in the state;" however, "in certain limited circumstances, even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule . . . [wa]s exorbitant."  *Id.* at 713-14 (internal quotation marks omitted) (citing *Lee*, 534 U.S. at 376).  Exorbitant application of a generally sound rule requires consideration of

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate government interest.

*Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (citing *Lee*, 534 U.S. at 381-85).

"New York's contemporaneous objection rule requires a party to object to what he . . . believes is legal error . . . at the time of such ruling . . . or at any subsequent time when the court had an opportunity [to address the objection]"; failure to do so renders the issue "unpreserved for appeal . . . ."  *Gutierrez v. Smith*, 702 F.3d 103, 110 (2d Cir. 2012).  The Second Circuit has "repeatedly [held] that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule."  *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) (citing cases).  The rule is applicable to the case at bar as the state court specified that petitioner's failure to previously object to the multiplicity of the allegations resulted in a failure to preserve his claim.  *Crowell*, 130 A.D.3d at 1365.  Therefore, this

represents an independent and adequate state rule resulting in a procedural default of petitioner's claims.

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he or she is actually innocent. *House,* 547 U.S. at 536-39; *Schlup*, 513 U.S. at 327; *Jackson*, 763 F.3d at 133; *see Dunham*, 313 F.3d at 730 ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency.") (quoting *Bousley*, 523 U.S. at 623). To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples*, 565 U.S. at 280; *Coleman*, 501 U.S. at 753. If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray,* 477 U.S. at 496 (referring to the "cause-and-prejudice standard"); *Stepney,* 760 F.2d at 45.

Here, petitioner has neither alleged nor does the record support any contentions of cause or actual innocence. Because cause has not been established, no discussion of prejudice is necessary. Thus there is nothing that can save petitioner's procedurally defaulted claim: habeas review is precluded.

In addition to the procedural reasons to deny review, the claim is also without merit.

> An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed . . . violat[ing] the Double Jeopardy Clause of the Fifth Amendment [and] subjecting a person to punishment for the same crime more than once.

*United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999) (citing *inter alia* United States

Const. amend. V; *United States v. Dixon*, 509 U.S. 688, 695-96 (1993)).  "When . . . the same statutory violation is charged twice, the question is whether the facts underlying each count were intended by Congress to constitute separate 'units' of prosecution."  *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004) (citing *Bell v. United States*, 349 U.S. 81 (1955)).

The legislative intent behind the crime of course of sexual conduct against a child leaves no doubt that courses of abuse can now be distinct units of prosecution.  This legislation was enacted to correct an impediment to prosecution resulting from a Court of Appeals case, in which it was held that child victims "must identify with considerable specificity the date and time frame of each individual act of sexual abuse when such abuse is repetitive and committed over an extended period of time."  Governor's Approval Mem, Bill Jacket, L 1996, ch 122 at 12 (citing *People v. Keindl*, 68 N.Y.2d 410 (1986)).  Failure to comply with the specificity requirements precluded the ability to indict.  *Id.*  The consequence, not surprisingly, was "a large number of cases in which there [wa]s particularly reliable evidence that young children ha[d] been repeatedly sexually abused [being] dismissed or compromised," with estimates of such cases being as high as 70 percent.  *Id.*  Practically, abusers were either not arrested or only charged with misdemeanors.  *Id.*

The Legislature went to great pains to define the allowable unit of prosecution in drafting these new criminal statutes.  The charged period of time for each crime is "over a period of time not less than three months," and "[a] person may not be subsequently prosecuted for any other sexual offense involving the same victim unless the other charged offense occurred outside the time period charged under this action."  Penal Law §§ 130.75(1), (2), 130.80(1), (2).  Further, "[w]henever a person is convicted of course of sexual

conduct against a child . . . and any other [sex crime] committed against the same child and within the period charged [for the course of sexual conduct against a child], the sentences must run concurrently."  Penal Law § 70.25(2-e).

Here, petitioner contends that his actions against both victims constituted one criminal transaction, not amenable to multiple units of prosecution.  In short, petitioner's "interpretation . . . incentivizes a child abuser to commit multiple acts.  Such interpretation is unconscionable or antithetical to the legislative objectives."  *People v. Pabon*, 28 N.Y.3d 147, 157 (2016).  There were two allowable units of prosecution here.  The first was the year June 2003 through June 2004, during which petitioner subjected both victims to sexual abuse in the form of touching their breasts and vaginas on a twice-weekly basis.  The second commenced a year later and continued for a protracted period of time, from June 2005 through the end of February 2008, during which time the nature of the abuse escalated to multiple occurrences of oral sex and vaginal penetration on at least a twice-weekly basis.  Furthermore, each unit was charged as to two separate victims.  The jury was required to find the elements of each crime satisfied as to each victim during those very specific time periods, which were easily separable and distinguishable given the geographic location and type of abuse that was taking place.  These allegations constitute separate crimes against separate victims, supported by separate elements and factual circumstances.  The resulting prosecution violated no principle of federal constitutional law, and was consistent with New York's legislative intent to protect vulnerable children from, and hold abusers accountable for, protracted periods of horrific sexual abuse.

For the reasons stated above, petitioner's claims of multiplicity are meritless.  Accordingly, habeas review is denied.

21

### E.    Ineffective Assistance of Counsel

Petitioner's claim that counsel was ineffective for failing to file a motion to dismiss pursuant to speedy trial grounds[2] is not entitled to habeas relief because the state court's decision dismissing it did not represent an unreasonable application of clearly established federal law.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different. *Premo v. Moore*, 562 U.S. 115, 121-22 (2011); *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The standard "must be applied with scrupulous care" in habeas proceedings, because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]" *Premo*, 562 U.S. at 122. "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted). A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Even if petitioner can establish that counsel was deficient, he still must show that he suffered prejudice. *Id.* at 693-94.

---

[2] Specifically, petitioner contends that his speedy trial rights were violated pursuant to CPL § 30.30 and not pursuant to the Sixth Amendment.

Here, petitioner cannot establish either prong of the *Strickland* test: there is nothing in the record to support the conclusion that counsel's performance was objectively unreasonable or incompetent or that petitioner was prejudiced by the failure to file the motion.  Petitioner contends that

> [a]ll the charges in 2012 and evidence were all acts that were inseparable components of the same criminal transaction as the rape charges filed in 2008.  The People knew about these charges back in 2008 and could have brought these charges against me in 2008, but instead waited four years later.  The defense counsel should have put in a motion to dismiss the indictment . . . []as untimely.

Pet. at 10.  The state court explained that "[w]here a defendant is charged with a felony, the People must be ready for trial within six months of the commencement of the criminal action . . . [(]when the first accusatory instrument is filed . . . .[)]" *Crowell*, 130 A.D.3d at 1365 (citations omitted).  However, the state court held that petitioner's "felony complaint and subsequently filed indictment charge conduct plainly arising from separate and distinct criminal transactions.  Thus, the speedy trial time clock commenced to run upon the filing of the subject indictment . . . ." *Id.*  The People again timely announced their readiness; therefore, petitioner "was not denied his statutory right to a speedy trial and his counsel was not ineffective for failing to make a motion premised on that ground." *Id.*

Here, the state court did not unreasonably apply clearly established federal law when it ultimately determined that petitioner's counsel's decision not to file a motion to dismiss was sound trial strategy.  Petitioner alleges that because both the felony complaint and indictment arise out of the same criminal transactions, all readiness had to be declared within six

months of filing the felony complaint and failure to do so violated his speedy trial rights.[3] However, making a motion to dismiss the subsequent indictment on such grounds would be meritless. For the reasons previously discussed, and also articulated by the state court, the 2012 charges of course of sexual conduct are separate and distinct from the 2008 rape charge. Each of the three charges was based on a different criminal transaction characterized by different conduct, supported by different factual allegations, which occurred at different times and in different places. The charges did not relate to each another: proving one charge was not contingent on using any of the facts from another. Thus, the felony complaint and subsequent indictment alleged separate, unrelated criminal actions. Accordingly, filing a motion to dismiss for the People's alleged failure to timely announce readiness would have been, as intimated by the state court, unsuccessful. Representation is not rendered ineffective because counsel refuses to make meritless motions. *See United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("Thus, the failure to make a meritless argument does not rise to the level of ineffective assistance . . . . ") (citations omitted).

Accordingly, the habeas petition is denied and dismissed.

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition (Dkt. No. 1) is **DENIED AND DISMISSED IN ITS ENTIRETY**; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner

---

[3] A criminal transaction is "conduct which establishes at least one offense" or "a group of acts either . . . so closely related and connected . . . as to constitute a single criminal incident, or . . . so closely related in criminal purpose . . . to constitute elements . . . of a single criminal venture." CPL § 10.10(2).

failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[4] and it is further

**ORDERED** that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:  April 3, 2018
         Syracuse, New York.

Brenda K. Sannes
U.S. District Judge

---

[4] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).